# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

**LONNIE L. JACKSON**,
   **Plaintiff,**
 v.                   Case No. 17-CV-627

**CO II OFFICER KUEPPER**,
   **Defendant.**
_____

## ORDER

Plaintiff Lonnie L. Jackson, a *pro se* transgender Wisconsin state prisoner who identifies as female, filed a complaint under 42 U.S.C. § 1983 alleging that several defendants violated her constitutional rights. Docket No. 1. I screened her complaint and allowed her to file an amended complaint that complied with Federal Rules of Civil Procedure 18(a) and 20. Plaintiff has filed an amended complaint. Docket No. 12-1. She has also filed a motion asking me to reconsider my denial of her motion to use $100 of her release account to pay for her litigation. Docket No. 11. This order screens plaintiff's amended complaint and resolves her motion.

### I. SCREENING AMENDED COMPLAINT

I am required to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a cognizable claim under the federal notice pleading system, plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for plaintiff to plead specific facts and her statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when [] plaintiff pleads factual content that allows the court to draw the reasonable inference that [] defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, I follow the principles set forth in *Twombly* by, first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) she was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was by defendants acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I am obliged to give plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A.  ALLEGATIONS**

At all times relevant to this complaint, plaintiff was an inmate at Oshkosh Correctional Institution (OCI) and defendants were employed by the Wisconsin Department of Corrections (WDOC).

Plaintiff alleges the following facts. On the evening of April 25, 2015, while she was being housed in the segregation unit, she asked defendant Kuepper to fill her medical ice bag—which was dark blue at the time—with ice, in accordance with her medical restriction. Defendant Kuepper took the bag and returned it to plaintiff half full of ice. Plaintiff wrapped the bag in a blue towel, placed it in her bed against her back, and went to sleep.

At some point, the ice in the bag had melted, and plaintiff was awakened by its leaking contents. She removed the bag from her bed. She later poured some of its contents into her red segregation cup, drank it, and then went back to sleep.

At some time between 3:05 a.m. and 3:20 a.m., plaintiff began feeling pains in her stomach, lightheaded, dizzy, and "quizzy." Docket No. 12-1 ¶ 22. She vomited twice. She then noticed "a great deal of 'Bubbles' in the toilet water." *Id.* She reviewed the medical ice bag contents, tasted what she had poured into her cup from the bag, and surmised that the bag contained "industrial hand sanitizing hand soap," a product used throughout the institution for cleaning. *Id.*

Plaintiff spoke with a third-shift range officer about what had happened and asked him if the use of soap in medical ice bags was a practice. The range officer said that it was common practice to use salt and pepper in medical ice bags to prevent abuse but not soap or any other products. The range officer also stated that the officer is supposed to inform the inmate of any additives he may have put in the bag prior to giving it to the inmate.

After the range officer left plaintiff's cell, plaintiff vomited once more and then informed the housing sergeant of what had happened. Plaintiff asked the sergeant to inform the health services unit (HSU) right away. He did, and he also wrote an incident report.

At about 6:30 a.m., Nurse Cory (not a defendant) took plaintiff to the treatment exam room and evaluated her. Cory explained to plaintiff that he had contacted poison control regarding plaintiff's ingestion of the soap and was told that plaintiff would simply have to let the soap pass through her system. There was nothing else that could be done. Cory told plaintiff that she would "feel nauseated for some time, and [may] get a runny-stool while it pass[es] through" but that she was to let the HSU know if her

4

symptoms worsened. *Id.* ¶ 24. At the time, plaintiff was taking "female hormones," "psychotropic medication," high blood pressure medication, diabetic medication, and pain medication, and so she asked Cory about the effects that the soap ingestion would have. *Id.* ¶ 25. Cory stated he would monitor plaintiff's progress. Plaintiff states she suffered symptoms of an "upset stomach, lightheadingness [*sic*], dizzy and quizzy [*sic*]" that lasted a week. *Id.*

At some point after being examined by Cory, plaintiff spoke with another correctional officer regarding the incident. She learned that "there is no standard of practice for any officer to use any kind of soap in ice bags, because of its danger to the inmate." *Id.* ¶ 27.

A short time later, defendant Kuepper came to plaintiff's cell smiling and laughing. He asked plaintiff whether she drank from the medical bag. When plaintiff responded yes, defendant Kuepper admitted that he put the soap in plaintiff's medical bag. Plaintiff asked defendant Kuepper why he did not tell her about the soap. Defendant Kuepper responded that he did not have to tell plaintiff anything and that he is "allowed to put anything [he] want[s] into those ice bags in order to prevent abuse of the privilege." *Id.* ¶ 28. Plaintiff asserted that she had a right to know what was in the medical bag and that Kuepper had "violated WDOC policies, and the Criminal Code of Wisconsin Laws related to 'intentionally poisoning inmates.'" *Id.* Defendant Kuepper again stated that he did not have to tell her anything and that plaintiff would find out when she drank it. He also stated that if he really wanted to poison plaintiff, "[he] would have used 'rat poison'" and that "he does this to all of the inmates when he works

5

segregation, and as a correctional officer, he is authorized to put [whatever] he chooses into medical ice bags, in order to teach the inmates a lesson when they abuse the medical ice bag privilege." *Id*. Defendant Kuepper also asserted that it was just soap and that plaintiff was making a big deal out of it. He then walked away.

Plaintiff subsequently wrote a formal complaint to defendant Warden Judy Smith asking for a full investigation regarding the incident. The complaint was denied. She also filed an inmate complaint and was interviewed by Teresa Murphy. Defendant Murphy informed plaintiff that her complaint "will be dismissed pursuant to DOC Executive Directive #16, for 'Confidentiality Reasons.'" *Id*. ¶ 29. The blue medical ice bags were later changed to clear, and defendant Kuepper left OCI for Waupun Correctional Institution.

In May 2015, plaintiff filed a formal complaint with defendant Edward Wall requesting a full investigation regarding her soap-ingestion incident. Defendant Wall did not respond.

In June 2015, plaintiff wrote a letter to defendant Cathy Jess explaining the incident and requesting to press charges against defendant Kuepper for assault. Plaintiff asserts that "defendant [James] Schwochert answered the letter." *Id*. ¶ 15.

Plaintiff also sent a letter regarding the incident to each of the following agencies: Oshkosh District Attorney's Office, Oshkosh Sheriff Department, and Oshkosh Police Department. In those letters, plaintiff requested an investigation and for criminal charges be filed against defendant Kuepper.

On June 15, 2015, Detective Paul Frey (not a defendant) came to the institution to see plaintiff and interviewed her regarding the incident. He asked plaintiff if she had any other evidence to support her claim; plaintiff responded that she would provide it to him. *Id.* ¶ 33. Frey told plaintiff that his office would get back in touch with her "to give[] her the decision as to where to go next." *Id.* Weeks later, Plaintiff received a letter from Frey stating that the matter was investigated but the Deputy District Attorney Scott A. Ceman (not a defendant) decided not to file criminal charges.

On August 22, 2015, plaintiff spoke with defendant Officer Zanon about the use of soap in medical ice bags. Defendant Zanon stated that he "authorized [his] officers to use any means of preventive measures to make and get inmates to comply with departmental policies and one of those measures is the use of [soap], which will prevent the inmates from drinking the melted ice water after the ice has been used for its intended purpose." *Id.* ¶ 35. Plaintiff attempted to explain to defendant Zanon that such practices were "wrong." *Id.* Defendant Zanon responded by telling her to file an inmate complaint or a civil suit. At a later time, plaintiff again attempted to talk with defendant Zanon about the use of soap in inmates' medical ice bags. Defendant Zanon again told her to file a lawsuit. He also informed her that he knew she had contacted the police department about the incident and that the use of soap in medical ice bags had been approved by the WDOC via defendants Jess and Wall.

On September 2, 2015, the Corrections Complaint Examiner Deputy Secretary Morgan (not a defendant) issued a decision regarding plaintiff's complaint and directed the OCI to place it on the "prioritized investigation list." *Id.* ¶ 36. Although it was

7

returned to the institution for further investigation, the complaint was ultimately dismissed.

On September 15, 2015, plaintiff spoke with defendant Murphy about the practice of allowing officers to put dangerous chemicals into medical ice bags. Defendant Murphy said that

> "[T]here's no known policy or no such policy that allows that to happen, and that if it is done, then the officer doing so is liable for any injury sustained by the inmate…Inmates need not be told that they can't drink the melted ice water after the ice was used for its intended purpose because it's common sense; however, officers are allowed to use 'salt and pepper' in those ice bags as preventative measures, but those officer still have to clear that with HSU."

*Id.* ¶ 37.

Sometime thereafter, plaintiff wrote to Health Service Manager Danielle Foster (not a defendant) and Assistant Health Service Manager Jamie Barker (not a defendant) regarding the HSU policy allowing the use of soap in inmates' medical ice bags. Plaintiff received a response stating that "[a]nything other than ice being used in medical ice bags is 'prohibited.'" *Id.*

At some point, plaintiff spoke with defendants Captain Hass Kuster and Lieutenant Norman about the use of soap in inmates' medical ice bags. They told her that the "practice would continue" and that if she did not "approve or like it, then don't come to segregation." *Id.* ¶ 38.

In November 2015, while plaintiff was being seen for her scheduled diabetic insulin appointments, she asked her treating physician about whether officers can place substances in medical bags. The physician explained that the use of any chemical in

8

medical ice bags other than ice is prohibited. If abuse of medical ice bags is suspected, the officer is instructed to issue a conduct report and to call the HSU.

Also in November 2015, plaintiff spoke with Center Director Jenny Delvaux (not a defendant) about whether there is a policy authorizing the use of soap in medical ice bags. Delvaux informed her that "to her knowledge there is no such policy but was generally unsure as to whether such a policy existed." *Id.* ¶ 38.

At some point, plaintiff spoke with defendant Deputy Warden Robert Hable about the use of soap in medical ice bags. Defendant Hable responded that "they are allowed to choose this kind of method, and that he will not stop it." *Id.* ¶ 40. Plaintiff informed Smith of Hable's decision. Smith responded that "she will support the decision of [Hable] and will not reverse or change his position." *Id.*

Plaintiff states that the OCI continues to use soap in the medical ice bags of inmates that are housed in the segregation unit. She seeks damages and declaratory and injunctive relief.

**B. DISCUSSION**

Plaintiff seems to be claiming that criminal charges should be filed against defendant Kuepper for having put soap in her medical ice bag, that the OCI has an unconstitutional policy of allowing officers to put soap in inmates' medical ice bags, and that defendants violated her constitutional rights by putting or authorizing the use of soap in her medical ice bag. I will discuss each claim in turn.

   **1. Failure to Prosecute or Investigate Claims**

To the extent plaintiff is asking me to declare that criminal charges should be filed against defendant Kuepper, her complaint fails to state a claim. " '[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.' " *United States v. Moore*, 543 F.3d 891, 899 (7th Cir. 2008) (quoting *United States v. Armstrong,* 517 U.S. 456, 464 (1996) (quotation omitted)). This "discretion cannot be successfully challenged merely on the ground that it is irrational or arbitrary; in the realm of prosecutorial charging decisions, only invidious discrimination is forbidden." *Id*. Indeed, a victim of allegedly criminal conduct is not entitled to the prosecution of the alleged perpetrator of the crime or even a criminal investigation. *See Leeke v. Timmerman*, 454 U .S. 83, 87 (1981) (per curiam) (inmates alleging beating by prison guards lack standing to challenge prison officials' request that magistrate not issue arrest warrants); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). Accordingly, plaintiff may not proceed on this claim.

## 2. Unconstitutional Policy Claim

To the extent plaintiff's complaint seeks prospective injunctive relief, the claim is moot as she is no longer housed at the OCI. *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009) Before plaintiff filed this complaint she had already been transferred from the OCI to another correctional facility, and she does not allege that there is any possibility of her returning to the OCI. "Any relief that [my] judgment might permit would be purely speculative in nature." *Id*. Therefore, plaintiff may not proceed on this claim.

### 3. Eighth Amendment Claim

To the extent that plaintiff is asserting a claim for damages against defendants for violating her Eighth Amendment rights by subjecting her the use of soap in her medical ice bag, that claim has not been rendered moot by her transfer. To sufficiently state such a claim

> [plaintiff] must allege facts that, if true, would satisfy both prongs of a bifurcated test. First, [she] must allege that, objectively, the conditions were serious enough to be considered cruel and unusual. Second, from a subjective point of view, [she] must allege that the defendants acted with a sufficiently culpable state of mind.

*McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993).

At this stage, I will construe plaintiff's alleged injuries from the ingestion of soap in her medical ice bag as objectively serious. *See Helling v. McKinney*, 509 U.S. 25, 33, (1993) (noting a constitutional right to be free from deliberate indifference to *current* serious health problems and unreasonable risk of serious damage to *future* health); *see also Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (same); *see also Board v. Farnham*, 394 F.3d 469, 479 (7th Cir. 2005) (same). This leaves me to focus on the second element of whether plaintiff has sufficiently alleged defendants acted with a sufficiently culpable state of mind. "A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Howard v. Bartow*, 131 F. Supp. 3d 789, 797 (E.D. Wis. 2015) (citing *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011)).

Plaintiff has adequately alleged that defendant Kuepper acted with deliberate indifference when he gave plaintiff her medical ice bag that he had purposefully infused

with soap. As pled, defendant Kuepper knew that there was a possibility that plaintiff would drink the bag's contents, but he disregarded that risk and did not tell plaintiff about the soap. Thus, plaintiff may proceed with her claim against defendant Kuepper.

Plaintiff may also proceed with a claim of deliberate indifference against defendants Zanon and Hable. Generally, there is no liability under § 1983 unless the defendant is personally involved in the violation of plaintiff's rights. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). "An official satisfies the personal responsibility requirement...if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent…[T]he defendants must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Comsys, Inc. v. City of Kenosha Wisconsin*, 223 F. Supp. 3d 792, 806 (E.D. Wis. 2016) (internal citations omitted). Plaintiff asserts that defendant Zanon admitted to authorizing defendant Kuepper's use of soap in her medical ice bag. She also states that Hable said the officers are allowed to use this method of deterrence. Zanon therefore approved of Kuepper's action, and Hable condoned it.

Plaintiff, however, has not sufficiently alleged a claim against defendants Norman or Kuster. She alleges that these defendants agreed with Kuepper's action and even supported the continued use of the practice. Yet, she does not allege that they knew of such a practice prior to Kuepper's act, let alone authorized or condoned it.

Likewise, plaintiff has not sufficiently pled a claim of deliberate indifference against Smith, Wall, Jess, or Schwochert. Indeed, she states she filed complaints and informed these defendants about Kuepper's use of soap in her medical ice bag *after* the

incident had occurred. She does not allege that they were personally involved with Kuepper's act or that Kuepper was acting under their direction or with their knowledge and consent.

Additionally, plaintiff names Jon Litscher and Captain Tony as defendants. However, she does not allege what Litscher or Tony did or failed to do to violate her rights. Since there is no liability under § 1983 unless the defendant is personally involved in the violation of plaintiff's rights, plaintiff may not proceed with a claim of deliberate indifference against Litscher or Tony. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009); *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003).

## II. MOTION FOR RECONSIDER TO ALLOW USE OF RELEASE ACCOUNT

Lastly, plaintiff has asked me to reconsider my denial of her motion to use her release account to support her litigation. In my denial of her motion, I informed plaintiff of the limited purpose for which a court can order the use of a prisoner's release account to pay for case proceedings. Plaintiff has, however, asked me to reconsider my denial because of her understanding of statutory language and in light of an order issued in another case. I will deny plaintiff's motion for reconsideration.

Plaintiff cites Wis. Admin. Code § DOC 309.49 and suggests that this regulation grants me authorization to order the use of her release account to pay for her litigation costs. Plaintiff fails to note that the section specifically states that the court order granting the disbursement of a prisoner's release account funds must be "lawful." And

as I explained in my prior order, no law allows me to order the State of Wisconsin to use an inmate's release account to pay federal litigation costs.

Plaintiff directs me to the order issued by U.S. District Judge Charles N. Clevert, Jr. in *Jackson v. Hamblin*, No. 12-CV-1035, 2014 WL 3196243, at *1 (E.D. Wis. July 8, 2014), on October 7, 2013, where the court ordered the use of release account funds to assist with the plaintiff's litigation costs. However, the court clearly noted that it did so because the plaintiff had not only exceeded her ability to apply for legal loans but had also used the last of her legal loan funds to seek relief from the court due to the defendants' untimely filed motion for summary judgment. In contrast, despite plaintiff's claims that she has exceeded her legal loan application ability, this matter has only just begun. I am only now screening plaintiff's complaint. Thus, her professed lack of funds has nothing to do with actions or inactions taken by defendants as it relates to the proceedings in this case.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for reconsideration (Docket No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's amended complaint (Docket No. 12-1) is the operative complaint in this lawsuit.

**IT IS FURTHER ORDERED** that Lieutenant Norman, Warden Judy P. Smith, Segregation Supervisor Hass Kuster, WDOC Secretary Jon Litscher, Secretary Cathy Jess, Administrator Security Captain Tony, and Division of Adult Institutions James R. Schwochert are **DISMISSED** as defendants.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on CO II Officer Kuepper, Deputy Warden Robert Hable, and Security Director James Zanon.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants CO II Officer Kuepper, Deputy Warden Robert Hable, and Security Director James Zanon shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS ALSO ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, plaintiff need not mail copies to defendants. Defendants will be served electronically through the court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the court.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 1st day of June, 2018.

<u>s/Lynn Adelman</u>
LYNN ADELMAN
District Judge